# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### (WESTERN DIVISION)

| | |
|---|---|
| PAUL FOURNIER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCUDERI GROUP, INC., a Delaware Corporation, SCUDERI GROUP, LLC, a Massachusetts Limited Liability Company, SALVATORE SCUDERI, DEBORAH SCUDERI, STEPHEN SCUDERI, NICHOLAS SCUDERI, and RUTH SCUDERI,<br><br>Defendants. | **CLASS ACTION**<br>**DEMAND FOR JURY TRIAL**<br><br>Civil Action No. 3:13-cv-30111 |

## AMENDED COMPLAINT

1.      Plaintiff Paul Fournier ("Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated, files this Amended Complaint against Defendants SCUDERI GROUP, INC., a Delaware Corporation, SCUDERI GROUP, LLC, a Massachusetts Limited Liability Company, SALVATORE SCUDERI, DEBORAH SCUDERI, STEPHEN SCUDERI, NICHOLAS SCUDERI, and RUTH SCUDERI ("Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

2.      This is a class action arising from Defendants' offering of securities in violation of the Securities Act of 1933, 15 U.S.C. § 77 et al. (the "Securities Act"), and the Massachusetts Uniform Securities Act, M.G.L. c. 110A (the "Massachusetts Securities Act").

3.      Plaintiff makes the allegations herein based on his and his counsel's independent investigation, including the review and analysis of numerous documents, such as the operating

agreements of various investment vehicles set up to invest in Scuderi Group, Inc. and Scuderi Group, LLC (together, "Scuderi Group" or the "Company"), investor lists, e-mail and other communications between Defendants and investors, and counsel's interviews of more than a dozen investors, as well as on information obtained from the SEC proceedings described below.

4.      On May 30, 2013, the Securities and Exchange Commission ("SEC") commenced cease-and-desist proceedings against Scuderi Group and Salvatore Scuderi pursuant to Section 8A of the Securities Act (the "Cease-and-Desist Proceedings").  The SEC's Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order is attached hereto as Exhibit A (the "SEC Order").

5.      In the SEC Order, the SEC found that Scuderi Group's offerings of unregistered preferred units between 2004 and 2012 failed to qualify for exemption from registration requirements of the Securities Act because Scuderi Group made offerings that substantially exceeded the Regulation D investor limits; failed to provide investors audited financial statements; and, at Salvatore Scuderi's direction, engaged in a plan to evade the registration requirements.  Thus, the SEC found that the offerings were made in violation of the Securities Act.  For the exact same reasons, confirmed not only by the SEC's findings but also by Plaintiff's independent investigation, the offerings violated the Massachusetts Securities Act.

6.      To settle the Cease-and-Desist Proceedings, Scuderi Group and Salvatore Scuderi agreed to cease and desist from committing or causing any violations of Section 5 of the Securities Act, and Salvatore Scuderi personally agreed to pay a civil penalty in the amount of $100,000 to the SEC.

7.      As part of the SEC settlement, Scuderi Group and Salvatore Scuderi did not admit the SEC charges, but they also did not deny them.  However, in a document titled "Information Sheet: Our Settlement With The SEC Your Questions Answered" ("Information Sheet") (attached hereto as Exhibit B) circulated by Scuderi Group to its investors after the announcement of the SEC Order, Defendants do not dispute, and indeed acknowledge, the accuracy of most of the salient facts in the SEC Order.

8.      As detailed herein, Defendants Scuderi Group and Salvatore Scuderi unlawfully offered and/or sold unregistered securities in violation of Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e, 77l(a)(1), and Sections 301 and 410(a)(1) of the Massachusetts Securities Act, M.G.L. c. 110A, §§ 301, 410(a)(1).  Furthermore, those same Defendants, in the offering memoranda for securities, made untrue statements of material fact and/or omitted material facts which they knew or could have known, had they exercised reasonable care, were untrue in violation of Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), and Section 410(a)(2) of the Massachusetts Securities Act, M.G.L. c. 110A, § 410(a)(2).  Defendants Salvatore Scuderi, Deborah Scuderi, Stephen Scuderi, Nicholas Scuderi, and Ruth Scuderi (the "Individual Scuderi Defendants") are also liable under Section 15 of the Securities Act, 15 U.S.C. § 77(a), and the Massachusetts Securities Act, M.G.L. c. 110A, § 410(b), as control persons of Scuderi Group.  In addition, Salvatore Scuderi and Ruth Scuderi are liable for materially aiding Scuderi Group's violations of the securities laws under Section 410(b) of the Massachusetts Securities Act.

9.      By reason of the foregoing violations of the Securities Act and the Massachusetts Securities Act, Plaintiff and the Classes below are entitled to recover from Defendants the

consideration paid for the securities, together with interest, costs, and reasonable attorneys' fees. 15 U.S.C. § 77l; M.G.L. c. 110A, § 410.

10.     Further, under *Frishman v. Maginn*, 75 Mass. App. 103 (2009), the agreements to sell the unregistered securities, in violation of state securities laws, are void as against Massachusetts public policy.

## PARTIES

11.     Plaintiff Paul Fournier is a resident of Granby, Massachusetts.  He purchased preferred units in Scuderi Group between March 2006 and March 2011, as indicated in the attached certification.

12.     At all relevant times, Defendant Scuderi Group, LLC and its successor in interest Defendant Scuderi Group, Inc. have had a principal place of business in West Springfield, Massachusetts.  From the date of its organization on April 19, 2002 until January 30, 2013, Scuderi Group, LLC was organized as a domestic limited liability company under Massachusetts law.  On or about January 30, 2013, Scuderi Group, LLC merged with and re-incorporated itself as a Delaware corporation named Scuderi Group, Inc.  The Company is the issuer that offered and sold the preferred units in Scuderi Group at issue in this litigation.

13.     Defendant Salvatore Scuderi is a resident of Westfield, Massachusetts.  At relevant times he was a co-manager of Scuderi Group, LLC, and President and a director of Scuderi Group, Inc.  He has led Scuderi Group's capital raises, prepared its offering memoranda, and signed every Scuderi Group Form D filing since 2002.  According to Scuderi Group's offering memoranda and its website, Salvatore Scuderi is responsible for the Scuderi Group's overall operations and business strategy.  Salvatore Scuderi is sued for his primary violations of the Securities Act and the Massachusetts Securities Act, as a control person of the Scuderi Group

under the Securities Act and the Massachusetts Securities Act, and for materially aiding the Scuderi Group's violations of the Massachusetts Securities Act.

14.     Defendant Deborah Scuderi is a resident of Feeding Hills, Massachusetts. According to Scuderi Group's filings with the Secretary of State for the Commonwealth of Massachusetts (the "Secretary"), Deborah Scuderi was a co-manager of Scuderi Group, LLC and Treasurer of Scuderi Group, Inc.  Deborah Scuderi is a control person of the Scuderi Group under the Securities Act and the Massachusetts Securities Act.

15.     Defendant Stephen Scuderi is a resident of Westfield, Massachusetts.  At relevant times, he was a manager of Scuderi Group, LLC and a director of Scuderi Group, Inc. According to Scuderi Group's offering memorandum dated January 1, 2005, and its offering memorandum dated January 25, 2010, Stephen Scuderi was legal counsel for Scuderi Group, and one of its managers.   Stephen Scuderi is a control person of the Scuderi Group under the Securities Act and the Massachusetts Securities Act.

16.     Defendant Nicholas Scuderi is a resident of Feeding Hills, Massachusetts.  At relevant times, he was a manager of Scuderi Group, LLC and a director of Scuderi Group, Inc. According to Scuderi Group's offering memorandum dated January 25, 2010, Nicholas Scuderi was Vice President of Sales for Scuderi Group, and one of its managers.  Nicholas Scuderi is a control person of the Scuderi Group under the Securities Act and the Massachusetts Securities Act.  Nicholas Scuderi routinely communicated with investors in the Scuderi Group.

17.     Defendant Ruth Scuderi is a resident of Westfield, Massachusetts.  At relevant times, she was the Director of Investor Relations for Scuderi Group.  Ruth Scuderi is a control person of the Scuderi Group under the Securities Act and the Massachusetts Securities Act.  Ruth

Scuderi routinely communicated with investors in the Scuderi Group.  Ruth Scuderi is also sued for materially aiding the Scuderi Group's violations of the Massachusetts Securities Act.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Sections 12 and 22 of the Securities Act, 15 U.S.C. § 77l and 77v.  This court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

19.     Venue is proper in Massachusetts pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. § 1391(b).  All Defendants reside or maintain places of business within Massachusetts, and the events giving rise to the violations complained of herein took place in Massachusetts.

20.     In connection with the acts alleged in this Complaint, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone, and email communications.

## FACTUAL ALLEGATIONS

21.     This action arises out of the offer and sale of unregistered, non-exempt securities and inaccurate disclosures regarding the use of offering proceeds by Scuderi Group and the Company's president, Salvatore Scuderi.

22.     Founded in 2002, Scuderi Group has purportedly been in the business of developing a new internal combustion engine design.  Scuderi Group claims that its business plan is to develop, patent, and license its engine technology to automobile companies and other large engine manufacturers.  Scuderi Group, which considers itself a development-stage company, has not generated any revenue.

23.     Between 2004 and 2012, Scuderi Group sold $80 million worth of preferred units through offerings that were not registered, or exempt from registration, with the SEC or the Secretary.

24.     Scuderi Group has funded its operations by raising $80 million from individual investors, both directly and through various pass-through investment vehicles organized as limited liability companies, partnerships, and trusts, which were organized specifically for the purpose of investing in Scuderi Group stock.  Scuderi Group and Salvatore Scuderi raised these funds through integrated offerings in which the Company sold "preferred units" to at least 415 investors.  Although required to do so, Scuderi Group never registered any of its offerings with the SEC, claiming that the offerings were exempt under Section 4(2) of the Securities Act and/or Regulation D safe harbors.  Scuderi Group also never registered any of its offerings with the Secretary, purporting to rely upon the coordination provisions set forth in Section 302 of the Massachusetts Securities Act, M.G.L. c. 110A, § 302, and claiming that the preferred units were exempt from registration under the Massachusetts Securities Act pursuant to 950 C.M.R. 14.402(B)(13)(I).

25.     Scuderi Group's offerings, in fact, were public offerings, and failed to qualify for the registration exemptions under the Securities Act or the Massachusetts Securities Act because the offerings substantially exceeded the Regulation D investor limits; because the Company failed to provide investors audited financial statements; and because, at Salvatore Scuderi's direction, the Company engaged in a scheme to evade the registration requirements by creating fig leaves in the form of limited liability companies, partnerships, and trusts, which by Defendants' own admission were designed to skirt the unaccredited investor limitations in the Securities Act.

26.     Scuderi Group's offerings also failed to qualify for any exemption for transactions "not involving any public offering."  The offerings were not limited in time and in number; were not limited to sophisticated investors; and were not limited to investors who had a relationship with Scuderi Group which enabled them to access information usually contained in a registration statement.

27.     Salvatore Scuderi drafted Scuderi Group's offering memoranda, which informed investors that Scuderi Group intended to use the proceeds from its offerings for "general corporate purposes, including working capital."  In fact, the Company made significant payments to Scuderi family members for non-corporate purposes, including large, *ad hoc* bonus payments to cover personal expenses; payments to family members who provided no services to Scuderi Group; loans that were undocumented, with no written interest and repayment terms; loans to fund $20 million personal insurance policies for which the Company has not been, and will not be, repaid; and personal estate planning services.  Between 2008 and 2011, a period when Scuderi Group sold more than $75 million in securities despite having no revenue, Salvatore Scuderi authorized more than $3.2 million in Company spending on such purposes.

**A.**     **Scuderi Group and Salvatore Scuderi Offered and/or Sold the Preferred Units in Violation of the Registration Requirements of the Securities Act and the Massachusetts Securities Act Because the Units Were Neither Registered Nor Exempt from Registration.**

**(i)**     **Overview of the Offerings**

28.     Scuderi Group and Salvatore Scuderi violated the registration requirements of the Securities Act and the Massachusetts Securities Act because they offered and/or sold preferred units in Scuderi Group that were not registered under either act or exempt from registration.

29.     The preferred units at issue are securities as defined by Section 2(a)(1) of the Securities Act and Section 401(k) of the Massachusetts Securities Act and are subject to those

acts' registration requirements.  The preferred units, however, are not federal covered securities under the National Securities Market Improvement Act ("NSMIA"), 15 U.S.C. § 77r(a) and (b), because the securities did not qualify for an exemption under Regulation D or any other federal exemption, such as the private offering exemption.  Nor are the preferred units covered securities under the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f)(1)(A), because, among other reasons, they were not listed on a national securities exchange.

30.     Section 5 of the Securities Act makes it unlawful to use the instruments of interstate commerce or the mails to sell a security unless, either, a registration statement is in effect, or the security or transaction is exempt from registration under Section 3 or Section 4 of the Securities Act.

31.     Section 301 of the Massachusetts Securities Act makes it unlawful for any person to offer or sell any security in Massachusetts unless, either, it is registered under the Massachusetts Securities Act, or the security or transaction is exempt from registration under Section 402 of the act.

32.     Scuderi Group purportedly relied upon the exemption set forth in Regulation D promulgated under the Securities Act to obviate the need for registration under the Securities Act.

33.     Scuderi purportedly relied upon the exemption in 950 C.M.R. § 14.402(B)(13)(i), promulgated under the Massachusetts Securities Act, to obviate the need for registration under the Massachusetts Securities Act.  That regulation provides an exemption from registration for "[a]ny offer or sale of securities offered or sold in compliance with the Securities Act of 1933, Regulation D, Rule 505 and/or 506 (17 C.F.R. 230.505 and 506), including any offer or sale

made exempt by application of Rule 508(a) (17 C.F.R. 230.508(a)),” and which satisfies, *inter alia*, the following further conditions and limitations:

> No commission, discount, fee or other remuneration shall be paid or given, directly or indirectly to any person for soliciting any prospective purchaser in the Commonwealth unless such person is either registered in this Commonwealth pursuant to M.G.L. c. 110A, § 201, or is exempt from registration thereunder; provided, however, it is a defense to a violation of 950 C.M.R. 14.402(B)(13)(i) if the issuer sustains the burden of proof to establish that the issuer did not know and in the exercise of reasonable care could not have known that the person who received a commission, discount, fee or other remuneration was not properly registered in this Commonwealth pursuant to M.G.L. c. 110A, § 201 or properly exempt from such registration.

950 C.M.R. § 14.402(B)(13)(i).

34.     The preferred units were not exempt from registration under the Securities Act and Regulation D because (a) the offerings were not private offerings; (b) the number of unaccredited investors in the offering exceeded the Regulation D unaccredited investor limit of 35 unaccredited investors; and (c) Scuderi Group failed to provide unaccredited investors with audited financial statements material to their investment.

35.     The preferred units were not exempt from registration under the Massachusetts Securities Act because (a) the offerings were not private offerings; (b) the units were not sold in compliance with Regulation D; and (c) on information and belief, remuneration was paid directly or indirectly to persons who solicited prospective purchasers in Massachusetts, who were neither registered as broker-dealers or agents under Section 201 of the Massachusetts Securities Act, nor exempt from registration as broker-dealers or agents under Section 201.

**(ii)     The Scuderi Group Offerings Exceeded the Regulation D Non-Accredited Investor Limits.**

36.     As Defendants have admitted, in order for an issuer to qualify for the Regulation D exemption, the number of non-accredited investors must be limited to 35.   An accredited

investor is a person whose net worth exceeds $1,000,000 and whose income exceeds $200,000 (or joint income of $300,000) in each of the last two years and in the current year.

37.    Scuderi Group's offering memoranda and subscription agreements with investors reflect the following overlapping sales of Scuderi Group preferred units during the period from January 2004 through July 2012:

| Date of Offering Memorandum | Series | Date of First Sale in Offering | Date of Last Sale in Offering |
|---|---|---|---|
| January 2004 | A | January 2004 | October 2005 |
| July 2004 | A | September 2004 | December 2004 |
| January 2005 | B | December 2004 | July 2008 |
| December 2005 | B | July 2005 | August 2006 |
| December 2007 | C | January 2008 | July 2010 |
| January 2010 | D | February 2010 | July 2012 |

38.    In connection with these offerings, Scuderi Group disseminated more than 3,000 offering memoranda to potential investors, directly and through intermediaries.  Scuderi Group found these potential investors by, among other methods, conducting hundreds of road shows and investor meetings across the United States; hiring a registered broker-dealer to find investors; paying commissions to broker-dealers; and paying numerous other intermediaries to encourage people to attend meetings that Scuderi Group arranged for potential investors.

Participation on the road shows and investor meetings was not limited to accredited investors but included numerous potential investors who were not accredited investors under Regulation D.

39.     Salvatore Scuderi participated in the road shows and investor meetings, directly solicited investments, and directly participated in writing the offering memoranda.  Ruth Scuderi was Scuderi Group's Director of Investor Relations and participated in the road shows and investor meetings, and directly solicited investments.  As reflected in Scuderi Group documents distributed to investors, other Individual Scuderi Defendants participated in the road shows as well.

> **(a)     Each of the Offerings Was Part of an Integrated and Continuous Offering.**

40.     Although purportedly denominated as separate offerings, the Series A, Series B, Series C, and Series D offerings were part of a single integrated offering pursuant to a single plan of financing that ran continuously from January 2004 until July 2012.

41.     Scuderi Group funded its purported research, operations, and marketing exclusively through the sale of these units.

42.     Scuderi Group's stock sales have all been for the same stated general purpose: building business by developing patents; building a working engine prototype; negotiating licensing agreements; and expanding corporate operations.

43.     Scuderi Group has always sold the same class of securities and received cash consideration for the vast majority of its shares.

44.     There were continuous and overlapping sales of the units throughout the period between January 2004 and July 2012.  Each offering commenced prior to or within six months of the last sale in the prior offering.  For example, the last sale pursuant to the January 2005 offering memorandum occurred in July 2008, after offers and sales had commenced pursuant to

the December 2005 and December 2007 offering memoranda.  Throughout the period from January 2004 until July 2012, there was no six-month period, before or after each of the offerings, in which there were no offers or sales of securities by Scuderi Group of the same or similar class of securities.

45.     All of the units were part of a single class of securities, as demonstrated by the facts that:

(a)     The owners of all of the units were entitled to one vote per unit, voting as a single class with each other.

(b)     All of the Series B, C, and D preferred units were convertible into Series A common units on a one-to-one basis.

(c)     All of the units had the same pre-emptive rights and anti-dilution protections under the Company's operating agreement.

(d)     None of the units had any liquidation preferences.

46.     When Scuderi Group, LLC, a Massachusetts limited liability company, converted into Scuderi Group, Inc., a Delaware corporation, each of the unit holders of Series A, B, C, and D preferred units received the same number of shares per unit in Scuderi Group, Inc.

47.     As the SEC found in the SEC Order: "Although comprised of discrete offerings, Scuderi Group's offers and sales of securities constitute one integrated offering" and were "one continuous offering for over eight years."  Scuderi Group and Salvatore Scuderi did not deny this finding in the SEC Order.

48.     Further, in the Information Sheet Scuderi Group circulated to investors after the SEC Order, the Company acknowledged that "if all sales of securities during this eight-year period are deemed to be part of a single, integrated offering, then the Company would be deemed

to have sold securities to more than 35 non-accredited investors in that offering, and thus, would not be able to avail itself of the safe harbor from registration."

      **(b)    The Offerings, Individually and Collectively, Exceeded the Regulation D Unaccredited Investor Limits by Using Pass-Through Investment Vehicles in an Unlawful Attempt to Skirt Registration Requirements.**

49.     The offerings of the Scuderi Group, individually and collectively, exceeded the Regulation D investor limits.

50.     Scuderi Group's own documents reflect that, in total, over 90 of the Company's investors were non-accredited investors, which exceeded the limit of 35 non-accredited investors permitted in Regulation D, Rule 506, when the offerings are integrated.

51.     Scuderi Group engaged in several practices that improperly reduced the number of non-accredited investors recorded on its books in an effort to circumvent the non-accredited investor limits set forth in Regulation D.  In connection with its Series B, C, and D offerings, Scuderi Group facilitated the formation of pass-through investment entities that were created solely for the purpose of investing in the Company.  Salvatore Scuderi reviewed operating agreements and investor subscription questionnaires subsequently used by the supposedly independent investment entities.

52.     In one instance, Scuderi Group sold more than $3.8 million in preferred units to at least three non-accredited "Air Hybrid" investment vehicles, the operating agreements of which expressly stated that they were "organized to invest in the Scuderi Group" and provided a "one to one equivalency between a unit in [the investment vehicle] and a [Scuderi Group] unit. . . ." Scuderi Group tallied only the three non-accredited investment vehicles on its shareholder list, even though, based on a review of the investor lists for two of the "Air Hybrid" vehicles, there are more than 200 unaccredited investors in just two such investment vehicles.

53.     Paul Caron ("Caron"), a long time Scuderi family friend, and paid lobbyist for Scuderi Group, who with Scuderi Group and Salvatore Scuderi helped organized the "Air Hybrid" investment vehicles, has acknowledged that Air Hybrid was being used as a means to skirt the unaccredited investor limits set forth in Regulation D.

54.     In a May 2011 email to a prospective investor, Caron wrote:

> I have attached the Scuderi Group's Private Placement Memorandum (PPM) to this e mail.  You should look at The Scuderi Group's Business Plan, pages 17 to 40 to get a full grasp of the size of the market and their strategy in marketing this new engine technology.  The PPM is the official document filed with the SEC and currently being offered to Qualified Investors.  Under SEC Regulations, at this stage of the investment, if you tried to buy into the Scuderi Group as a Qualified Investor (Someone with assets over 1 Million Dollars or with a minimum annual income of $200,000.00 for the last three years) the minimum investment would be 100,000 shares or $560,000.00.  Since not many people I know have that kind of pocket money, the only other way you can invest at this time is through a recognized Investment Club/Group.  My investment clubs, "The Air Hybrid Investment Group I & The Air Hybrid Investment Group II, LLC & The Air Hybrid Investment Group III, LLC", are such investment clubs.  The minimum investment in my club is 1,000 shares or a minimum investment of $5,600.  Any additional investments over the 1,000 unit minimum can be made in 100 share increments ($560.00)…. If you are interested in joining the club as an investor, disregard any of the paperwork you see in the PPM as it refers to Qualified Investors coming in at investment levels of $560,000.

55.     Similarly, in a January 14, 2013 email from Caron to investors in Air Hybrid, he wrote that the Air Hybrid limited liability companies "were originally set up as a vehicle to allow smaller investors to participate in the Scuderi Group investment opportunity without having to invest the minimum investment required of Qualified Investors" but that, on Scuderi Group's books, such a vehicle was "treated as ONE individual investor."

56.     In addition to the "Air Hybrid" investment vehicles, Scuderi Group, Salvatore Scuderi, and Ruth Scuderi facilitated the creation of numerous other so-called investment vehicles, including a series of six Power Train Investors Group LLCs, six Last Chance

Technology Partnerships, and Bayport Technologies Partnerships, all of which were formed by or with the assistance of William Constantine, a current Scuderi Group employee, who was compensated by Scuderi Group for soliciting the investments. Each of the entities was formed for the purpose of investing in Scuderi Group, did not own any securities other than Scuderi Group preferred units, and was formed in order to skirt the accredited investor limits set forth in Regulation D. On information and belief, there were many more than 35 unaccredited investors in each of these entities, and, collectively, there were many hundreds of unaccredited investors in these entities, through which Scuderi Group raised millions of dollars.

57.     Scuderi Group repeatedly sold stock to multiple tenants in common while recording only one owner of record. Scuderi Group also misclassified more than a dozen investors as accredited even though the investors had submitted documents to Scuderi Group expressly indicating they were in fact non-accredited investors.

58.     In addition to the foregoing methods that Scuderi Group used to try to avoid the limitation of 35 non-accredited investors, Scuderi Group also helped investors form trusts and partnerships to aggregate the investments of unaccredited investors in order to skirt the non-accredited investor limits set forth in Regulation D. Among the trusts formed to aggregate the investments of unaccredited investors were the Zert Trust and the Munz Trust, which were both formed by Paul Munzert and collectively had more than 60 investors, who, on information and belief, were unaccredited. Both trusts were formed for the purpose of purchasing Series C preferred units in Scuderi Group.

59.     Representatives of the Scuderi Group expressly told investors how to invest with the Scuderi Group, even if the investors were not accredited. Ruth Scuderi, for example, who routinely solicited investments and communicated with potential and actual investors in the

Scuderi Group, told a potential investor how investors had formed partnerships and other investment vehicles as a means of skirting the accreditation requirements.  Indeed, various Individual Scuderi Defendants told investors they could get around the qualified investor requirements by setting up a group.  After the SEC Order, the Scuderi Group stated that it would cease allowing non-accredited investors to invest with the Scuderi Group, be it directly, or through a partnership, trust, or limited liability company.

60.     Scuderi Group knew that the investors in these pass-through investment vehicles were not accredited investors.  Various investor suitability questionnaires submitted to Scuderi Group expressly indicated that the investors in the foregoing entities did not meet the minimum income and/or net worth requirements to be considered accredited investors, including but not limited to the following statements:

(a)     One investor suitability questionnaire indicated gross income during each of the last two years did not exceed $100,000, joint gross income with spouse did not exceed $300,000, and net worth was less than $1,000,000.

(b)     Another investor suitability questionnaire stated gross income was $25,000 and net worth was $250,000-$500,000.

(c)     An investor suitability questionnaire for another investor stated gross income of $25,000 and net worth under $100,000.

(d)     An investor suitability questionnaire for another investor listed less than $200,000 in gross income, gross income in current year that did not exceed $100,000, and net worth of $50,000-$100,000.

(e)     Another investor suitability questionnaire stated gross income of less than $200,000, and net worth of $100,000-$250,000.

(f)     Another investor suitability questionnaire stated gross income that exceeded only $25,000 and net worth of $50,000-$100,000.

61.     The Scuderi Group has acknowledged that it was aware of these investment vehicles and that, if each non-accredited investor in the investments vehicles were counted, the offerings would exceed the accredited investor limitations in Regulation D.  In the Information Sheet, Scuderi Group wrote:

Q.      Why did the company accept investments from investment clubs and tenants-in-common?

A.      We have in the past accepted investments from investment clubs and from investors organized as tenants-in-common because we believed that this is what our investors desired.  We observed that the increase in the number of investment clubs and tenancies-in common coincided with the company's increase, in 2007, of the minimum investment amount to $560,000.  However, if the SEC were to count the non-accredited members of investment clubs as direct participants in our offerings, we would further exceed the allowable limit of 35 non-accredited investors in order to be able to avail ourselves of the safe harbor provisions of Regulation D.  In the near future, we plan to avoid this issue altogether by making our next offering available only to accredited investors.

**(c)     The Investment Vehicle Members and Partners Were Considered, De Facto, Scuderi Group Investors.**

62.     Scuderi Group, Salvatore Scuderi, and Ruth Scuderi understood and intended that investments in certain trusts, limited liability companies, and partnerships in substance were investments in Scuderi Group, and "club members" were referred to and treated as investors in Scuderi Group.  This is illustrated by numerous Scuderi Group documents in the possession of investors, including but not limited to the following.

63.     As part of the solicitation, the members of the trusts, limited liability companies, and partnerships were provided with copies of the following Scuderi Group offering memoranda: the January 2004 Series A Memorandum; the July 2004 Series A Memorandum; The Scuderi Group Limited Liability Company Series B Preferred Voting Membership Units Confidential

Private Offering Memorandum dated January 1, 2005; The Scuderi Group Limited Liability Company Series B Preferred Voting Membership Units Confidential Private Offering Memorandum dated December 15, 2005; The Scuderi Group, LLC Series C Preferred Units Confidential Private Offering Memorandum dated December 21, 2007; or The Scuderi Group, LLC Series D Preferred Units Confidential Private Offering Memorandum dated January 25, 2010.

64.     One of the series of partnerships set up to invest in Scuderi Group was called Last Chance Technology.  A letter sent to Last Chance Technology investors was entitled "Dear Scuderi Investor."  The letter discusses the valuation of the Company and refers to giving "all existing stock holders a two for one split, which is equivalent to doubling the number of shares you own."

65.     The Last Chance Technology partnership agreements expressly state that the partnership is formed "for the purpose of purchasing securities of the Scuderi Group, LLC."  It also references that the Scuderi securities are not registered, there is a minimum purchase of $560,000, and the undersigned want to pool their resources to meet the $560,000 minimum requirement.  Paragraph 4 of the agreement states "the sole purpose of the partnership is to buy, sell, and hold Scuderi securities in the form of series D preferred voting membership units offered under a[n offering memorandum] dated January 5, 2010."  It recites that the undersigned agree they have read the Scuderi Group offering documents.  It states that each of the undersigned agree to contribute to the partnership an amount equal to the purchase price of the Scuderi Group securities desired.  It also states that income from Scuderi Group securities will be distributed to partners in accordance with their respective partnership interests.

66.     Similarly, the trust agreements for the Zert Trust and the Munz Trust recite that they were formed for the purpose of investing in Series C preferred units in Scuderi Group.

67.     One of the partnerships set up to invest in Scuderi Group was called the Maslar-Scuderi Group Partnership.  Its partnership agreement states that the purpose of the partnership is to hold shares of interest in Scuderi Group, LLC.  Exhibits to the agreement list the fifteen partners and, in some cases, the amounts of their investments, which range as small as $500.

68.     A second amendment to the Maslar-Scuderi Group Partnership lists seven additional investors and references a purchase price of $5.66 per unit for Scuderi Group Series C units.

69.     As indicated above, Caron served as the intermediary between Scuderi Group and the investors in Air Hybrid.  He regularly transmitted communications from Scuderi Group to investors, including, without limitation, in the examples below.  In communicating with investors, Caron acknowledged that Air Hybrid was a pass-through investment and treated all of the vehicles as one single vehicle, communicating with all Air Hybrid members together.

(a)     In a May 6, 2011 email to prospective investors with the subject line "Scuderi Investment Opportunity," Caron attached the Scuderi Offering Memorandum and told prospective investors, "once the Scuderis go public and the Investment Club dissolves, all of the units currently being held by the [Air Hybrid] will be converted over to individual shares of Scuderi Stock that will be assigned to the members based on their individual investments.  There will be a one to one conversion from units of the [Air Hybrid] to shares of Scuderi Stock in the individual investor's names."

(b)     In a July 19, 2011 email to Air Hybrid members, Caron attached the most recently amended operating agreement and stated "please consider this your legal document

certifying the number of units you hold in the Scuderi Group."  The email further stated: "the number of units you hold in the Air Hybrid Investment Club … in essence represents your holdings in the Scuderi Group."

(c)       Caron distributed Scuderi Group "Investor Updates" to Air Hybrid members.  In an email to a very long list of investors on September 27, 2011, Caron attached Scuderi Group's most recent Investor Update.

(d)       In another email dated May 12, 2012, Caron attached another Scuderi Group Investor Update and advised that individual investors seeking additional information should contact Ruth Scuderi, Director of Investor Relations.

(e)       In an email to investors dated January 14, 2013, Caron stated that each club had pooled the investments of many small investors, and that the investment club was treated as one single investor by Scuderi Group.

(f)       In an email to investors dated March 20, 2013, Caron stated that "the Scuderi Group recognizes and values every one of **its smaller investors**…. If it were not for all of the small investors…the Scuderi Group would not be where it is today…." (Emphasis added).

(g)       In a March 26, 2013 email to investors, Caron attached a letter from Ruth Scuderi with information "on how to go to the Scuderi's new secure investor website where all Scuderi Investors can log on…."  In other words, the "investment club" investors were given access to the private, secure website for Scuderi Group investors.

(h)       In a June 1, 2013 email, Caron advised Air Hybrid members that they could access Scuderi Group correspondence by accessing its "secure ShareFile data site."

70.     As demonstrated by the foregoing, the offerings and sales of interests in the limited liability companies and other entities were expressly for the purpose of investing in Scuderi Group preferred units pursuant to a scheme to circumvent the registration requirements of Regulation D and the Massachusetts Securities Act.

**(iii)     Scuderi Group Failed to Provide Non-Accredited Investors With Audited Financial Statements that Were Material to Their Investments.**

71.     Issuers of more than $1 million in securities can only obtain the Regulation D registration exemption if they provide non-accredited investors with audited financial statements.

72.     There were no audited financial statements or balance sheets included in the offering memoranda that were given to investors.

73.     In addition, Scuderi Group never obtained audited financial statements and never provided them to its non-accredited investors.

74.     This would have been material to investors because audited financial statements would have revealed that Scuderi Group engaged in significant related-party transactions, including, among other things, loans to Scuderi family members without documented interest or repayment terms, and payments to family members who were not employees.

75.     Defendants' failure to provide non-accredited investors with audited financial statements provides an additional and independent basis for finding that the offerings were not exempt from registration under Regulation D.

**(iv)     Scuderi Group Failed to Comply with Rule 503 of Regulation D.**

76.     Scuderi Group and Salvatore Scuderi failed to comply with Rule 503 by making inaccurate statements in five Forms D filed with the SEC.  In Forms D filed in January 2008 and April 2008, Scuderi Group incorrectly stated that it had not sold any securities to non-accredited investors in connection with those offerings.  In Forms D filed in February 2005, December

2005, and February 2010, Scuderi Group incorrectly stated that the Company had not sold securities to any investors as of the filing dates. Scuderi Group also failed to comply with Rule 503 by failing to file Forms D within fifteen days of the first sale of securities in connection with the Company's January 2005 and December 2005 offerings and failing to file an amended Form D in February 2011 for an offering that had continued for a year.

77.     Defendants' failure to comply with Rule 503 provides an additional and independent basis for finding that the offerings were not exempt from registration under Regulation D.

(v)     **The Offerings *Were* Public Offerings.**

78.     The offerings also failed to qualify for any exemption for transactions "not involving any public offering." To the contrary, the offerings were "public offerings." The offerings were directed to persons who need the protection of the Securities Act—specifically, unsophisticated investors with no particular expertise in investments or in the industry in which Scuderi Group operated. For that reason alone, but also for the additional reasons set forth below, the offerings were public offerings.

79.     First, the offerings were neither limited in time or scope. The securities were continuously offered over the course of eight years to over 3,000 investors through, among other means, hundreds of road shows.

80.     Second, the offerings were not limited to sophisticated investors. To the contrary, Scuderi Group, Salvatore Scuderi, Ruth Scuderi, and various intermediaries actively solicited unsophisticated investors to invest through the investment vehicles.

81.     Third, the offerings were not limited to persons that had a relationship with the issuer enabling them to command access to information that would otherwise be contained in a

registration statement.  Rather, investors were solicited throughout the country who had no prior relationship to Scuderi Group or any of its officers or directors and who did not have access to information that would otherwise be contained in a registration statement, such as audited financial statements.

> **(vi)** **Scuderi Group and Salvatore Scuderi Violated Sections 5 and 12(a)(1) of the Securities Act and Sections 301 and 410(a) of the Massachusetts Securities Act Which Prohibit the Offer or Sale of Securities Without a Registration Statement or an Exemption from Registration.**

82.     As a result of the conduct described above, Scuderi Group and Salvatore Scuderi violated Section 5 the Securities Act because they offered or sold securities which were not (a) registered under the Securities Act or (b) exempt from registration under Section 4 of the Securities Act.

83.     As a result of the conduct described above, Scuderi Group and Salvatore Scuderi violated Section 301 of the Massachusetts Securities Act because they offered or sold securities in Massachusetts which were not (a) registered under the Massachusetts Securities Act; (b) exempt from registration under Section 402 of the Massachusetts Securities Act; or (c) a federal covered security.

84.     Under Section 12(a)(1) of the Securities Act and Section 410(a) of the Massachusetts Securities Act, Plaintiff and the members of the Nationwide and Massachusetts Classes defined below may recover from Scuderi Group and Salvatore Scuderi the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or damages if they no longer own the security.

B.     **Scuderi Group and Salvatore Scuderi Offered and/or Sold the Preferred Units by Means of Untrue Statements of Material Facts and Omissions of Material Facts, Necessary in Order to Make the Statements, in Light of the Circumstances in Which They Were Made, Not Misleading.**

85.     Scuderi Group and Salvatore Scuderi made inaccurate disclosures regarding the use of offering proceeds.  In offering memoranda dated December 21, 2007 and January 25, 2010 that Salvatore Scuderi prepared and distributed, Scuderi Group said that it planned to use the net proceeds from the offerings "for general corporate purposes, including working capital." Scuderi Group sold securities pursuant to these offering memoranda from 2008 to 2012, raising $80 million.  Scuderi Group's disclosures gave investors the misleading impression that the Company would use the offering proceeds only for the direct benefit of the Company.  Instead, at Salvatore Scuderi's direction, Scuderi Group used a material portion of the proceeds for the direct benefit of Scuderi family members.

86.     These disclosures were inaccurate because they failed to inform investors that the Company, at Salvatore Scuderi's direction, had been, and was planning to continue, using a significant portion of the proceeds from securities offerings to make: large, *ad hoc* bonus payments to Scuderi family employees to cover personal expenses; payments to family members who provided no services to the Company; loans to Scuderi family members, without documented interest or repayment terms; loans to fund $20 million personal "split-dollar" insurance policies for six of the Scuderi siblings for which the Company has not been, and will not be, repaid; and payments for personal estate planning services for Scuderi family members. All these payments were made at Salvatore Scuderi's sole direction.  In total, from 2008 to 2011, Scuderi Group, at Salvatore Scuderi's direction, used at least $3.2 million, or 4.3% percent, of the offering proceeds to benefit the Scuderi family personally over and above the usual compensation that the Scuderi family members employed by the Company received.

87.     According to the findings in the SEC Order, which Scuderi Group confirmed in the Information Sheet, seven Scuderi family members who were Scuderi Group employees received $2.9 million in salaries from 2008 to 2011.  Though the Company had not generated any revenue, between 2008 and 2011, Salvatore Scuderi authorized the issuance of hundreds of checks totaling $1.6 million as *ad hoc* bonuses to Scuderi family members who were Scuderi Group employees to cover personal expenses.

88.     According to the findings in the SEC Order, which Scuderi Group confirmed in the Information Sheet, between 2008 and 2011, Salvatore Scuderi directed that Scuderi Group make payments totaling more than $330,000 to his mother, the widow of Scuderi Group founder, Carmelo Scuderi.  Scuderi Group had no legal or contractual obligation to make any of these payments.  Salvatore Scuderi's mother was not a Scuderi Group employee, and she provided no services to the Company.

89.     According to the findings in the SEC Order, which Scuderi Group confirmed in the Information Sheet, between 2008 and 2011, Salvatore Scuderi directed that Scuderi Group make payments totaling $240,000 to one of his brothers.  Scuderi Group had no legal or contractual obligation to make any payments to this brother.  During this period, this brother was not an active Scuderi Group employee, and provided no services to the Company.

90.     According to the findings in the SEC Order, which Scuderi Group confirmed in the Information Sheet, at Salvatore Scuderi's direction, Scuderi Group also made over $500,000 in loans to Scuderi family members employed by the Company in 2010.  These loans were issued without documented interest or repayment terms.  None of these loans have been repaid, in whole or in part.

91.     According to the findings in the SEC Order, which Scuderi Group confirmed in the Information Sheet, at Salvatore Scuderi's direction, Scuderi Group made additional loans that enabled Salvatore Scuderi and five of his siblings to pay monthly premiums on $20 million "split-dollar" life insurance policies whose beneficiaries were the Scuderi siblings' personal trusts.  These arrangements provided that the Company would be repaid upon the death of an insured, at which time the insurer would make a payment to the beneficiary and the beneficiary would repay the loan received from the Company.  Scuderi Group and Salvatore Scuderi failed to disclose that the Company lent more than $605,000 for premiums on insurance policies for Scuderi family members where, as Scuderi Group has since admitted in direct communications with the investors, the only collateral for the loans was the policies themselves.

92.     Scuderi Group subsequently canceled the insurance policies in 2011 and has never recovered the loans the Company made to family members to pay for the policies.  Scuderi Group, at Salvatore Scuderi's direction, paid more than $230,000 in trust and estate planning expenses for six Scuderi family members, one of whom never worked for the Company.

93.     Even though they were labeled as private placements, the offering memoranda are considered prospectuses under Section 12(a)(2) because they were documents used to solicit the public to acquire securities, and Scuderi Group was therefore required to file a registration statement because the offerings did not qualify for any exemption under the Securities Act.

94.     Scuderi Group and Salvatore Scuderi violated Section 12(a)(2) of the Securities Act and Section 410(a)(2) of the Massachusetts Securities Act by offering or selling a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

27

95.     Under Section 12(a)(2) of the Securities Act and Section 410(a)(2) of the Massachusetts Securities Act, Plaintiff and the members of the Classes may recover from Scuderi Group the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or damages if he no longer owns the security.

**C.      Salvatore Scuderi and the Other Individual Scuderi Defendants Are Control Persons of Scuderi Group.**

96.     As the co-managers of Scuderi Group and officers and directors of the Company, the Individual Scuderi Defendants, by reason of their high-level executive positions, were controlling persons of Scuderi Group and had the power and influence, and exercised the same, to cause the Company to engage in the conduct complained of herein.  The Individual Scuderi Defendants were also culpable participants in statutory violations alleged herein.

**D.      Discovery of Violations**

97.     On or about December 21, 2012, Scuderi Group notified investors, for the first time, that it was under investigation by the SEC and Massachusetts securities regulators.  In the December 21, 2012 update to investors, Scuderi Group disclosed that:

(a)     on June 29, 2011, the Company received a request for information from Massachusetts securities regulators about the Company's securities offerings, and that it had fully cooperated with this request;

(b)     on and subsequent to July 6, 2011, the Company had received requests for information from the SEC, that the Company had met with SEC staff on several occasions and fully cooperated with the SEC investigation;

(c)     on September 5, 2012, the SEC sent Scuderi Group a Wells notice, stating that the staff had made a preliminary determination that it did not comply with federal securities

law requirements governing the registration of securities offerings and the content of offering memoranda; and

(d)      the Company and its legal counsel disagreed with the SEC's views, were in active discussions with the SEC, were trying to seek resolution, and that the SEC investigation would not prevent the Company from moving forward.

98.      Scuderi Group did not provide any details about the nature of any possible violations in the December 21, 2012 investor update and denied any liability.

99.      The SEC commenced the Cease-and-Desist Proceedings on May 30, 2013.  The SEC found that Scuderi Group's offerings were made in violation of the Securities Act.  As part of the SEC Order, the Scuderi Group was required to "inform every known holder of Scuderi Group securities of the settlement between the Commission, Scuderi Group, and Mr. Scuderi and provide them with a URL where they can review a copy of the Order."

100.    Plaintiff and the members of the Classes did not discover, and could not have discovered, with reasonable diligence, the violations alleged herein, prior to receiving the required notification from Scuderi Group subsequent to May 30, 2013.

## CLASS ACTION ALLEGATIONS

101.    Plaintiff brings this action on his own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a nationwide class (the "Nationwide Class") consisting of:

> All persons or entities who purchased preferred units of Scuderi Group directly, or through a limited liability company, partnership, trust, or any other investment vehicle that was set up for the purpose of purchasing Scuderi Group preferred units, between June 13, 2010 and the present.

102.   Plaintiff also brings this action on his own behalf and as a class action pursuant to

Federal Rule of Civil Procedure 23 on behalf of a Massachusetts class (the "Massachusetts

Class") consisting of:

> All persons or entities who purchased preferred units of Scuderi Group
> directly, or through a limited liability company, partnership, trust, or any
> other investment vehicle that was set up for the purpose of purchasing
> Scuderi Group preferred units, in Massachusetts between January 1, 2004
> and the present.

103.   The Nationwide Class and the Massachusetts Class are sometimes collectively

referred to as the "Classes."

104.   Excluded from the Classes are Defendants, as well as any affiliated companies,

immediate family members of Defendants, or entities they control.

105.   This action is properly maintainable as a class action under Federal Rule of Civil

Procedure 23.

106.   Each Class is so numerous that joinder of all members is impracticable.  While

the exact number of Class members is unknown to Plaintiff at this time and can only be

ascertained through appropriate discovery, on information and belief there are well in excess of

400 members of the Nationwide Class, and in excess of 200 members of the Massachusetts

Class.

107.   There are questions of law and fact which are common to the Nationwide Class

and Massachusetts Class and which predominate over questions affecting any individual Class

member.  The common questions include, *inter alia*, the following:

(a)   whether Scuderi Group and Salvatore Scuderi violated Sections 5 and 12(a)(1) of

the Securities Act by offering or selling unregistered Scuderi Group securities for which

there was no valid exemption to registration under the Securities Act;

(b)     whether Scuderi Group and Salvatore Scuderi violated Sections 301 and 410(a)(1) of the Massachusetts Securities Act by offering or selling unregistered Scuderi Group securities in Massachusetts for which there was no valid exemption to registration under the Massachusetts Securities Act;

(c)     whether Scuderi Group and Salvatore Scuderi offered or sold Scuderi Group securities to Plaintiff and members of the Nationwide and Massachusetts Classes by means of untrue statements of material fact and/or omissions of material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 12(a)(2) of the Securities Act and Section 410(a)(2) of the Massachusetts Securities Act;

(d)     whether Scuderi Group and Salvatore Scuderi knew, or in the exercise of reasonable care could have known, of the foregoing untrue statements of material fact and/or omissions of material fact pursuant to Section 12(a)(2) of the Securities Act and Section 410(a)(2) of the Massachusetts Securities Act;

(e)     whether Salvatore Scuderi and the other Individual Scuderi Defendants are control persons of Scuderi Group and jointly liable with Scuderi Group for its violations of the Securities Act under Section 15 of the Securities Act;

(f)     whether Salvatore Scuderi and the other Individual Scuderi Defendants are control persons of Scuderi Group and jointly liable with Scuderi Group for its violations of the Massachusetts Securities Act under Section 410(b) of that Act;

(g)     whether Salvatore Scuderi and Ruth Scuderi, acting as employees, materially aided Scuderi Group's sale of securities to Plaintiff and members of the Massachusetts

Class in violation of the Massachusetts Securities Act under Section 410(b) of that Act; and

(h)      whether the sales of preferred units to Massachusetts purchasers in violation of Regulation D are void as against public policy.

108.    Plaintiff's claims are typical of the claims of the other members of the Classes, and Plaintiff does not have any interests adverse to the Classes.

109.    Plaintiff is an adequate representative of the Classes, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Classes.

110.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for the party opposing the Classes.

111.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

112.    Defendants have acted on grounds generally applicable to the Classes with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Classes as a whole.

## **COUNT I**

For Violations of Sections 5 and 12(a)(1) of the Securities Act
(Against Scuderi Group and Salvatore Scuderi on behalf of Plaintiff and the Nationwide Class)

113.    Plaintiff repeats and realleges each allegation set forth herein.

114.    This count is brought pursuant to Sections 5 and 12(a)(1) of the Securities Act, seeking a judgment requiring Defendants to rescind or retract certain transactions pursuant to which it sold unregistered securities to Plaintiff and the members of the Nationwide Class.

115.    Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l, provides that "[a]ny person who offers or sells a security in violation of section 5…shall be liable…to the person purchasing such security from him…to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon tender of such security…."

116.    Defendants Scuderi Group and Salvatore Scuderi offered and sold securities in Scuderi Group to Plaintiff and the members of the Nationwide Class.

117.    By offering and/or selling unregistered securities to Plaintiff and the members of the Nationwide Class, without any proper exemption under Sections 3 or 4 of the Securities Act, 15 U.S.C. §§ 77c and d, Defendants Scuderi Group and Salvatore Scuderi violated Section 5 of the Securities Act, 15 U.S.C. § 77e.

118.    Plaintiff and the members of the Nationwide Class purchased Scuderi Group preferred units and have been damaged thereby.

119.    Pursuant to the Securities Act, Plaintiff and Nationwide Class members are entitled to recover from Defendants Scuderi Group and Salvatore Scuderi the consideration paid for the securities, together with interest thereon from the date of payment, less the amount of any income received on the securities, upon the tender of the security.

## COUNT II

For Violation of Section 12(a)(2) of the Securities Act
(Against Scuderi Group and Salvatore Scuderi on behalf of Plaintiff and the Nationwide Class)

120.    Plaintiff repeats and realleges each allegation set forth herein.

121.    This count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), seeking a judgment requiring Defendants Scuderi Group and Salvatore Scuderi to rescind or retract certain transactions pursuant to which it sold securities by means of untrue statements or omissions of material fact to Plaintiff and the members of the Nationwide Class in violation of Section 12(a)(2).

122.    Section 12(a)(2) of the Securities Act provides that any person who

> (2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission shall be liable, subject to subsection (b) of this section, to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

123.    Defendants Scuderi Group and Salvatore Scuderi offered and sold securities in Scuderi Group to Plaintiff and the members of the Nationwide Class by means of the offering memoranda, which are considered a prospectus under Section 12(a)(2).

124.    By offering and/or selling securities to Plaintiff and the members of the Nationwide Class through the use of the offering memoranda, by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading, Defendants Scuderi Group and Salvatore Scuderi violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l.

125.    Plaintiff and the members of the Nationwide Class purchased Scuderi Group preferred units without knowledge of the untrue statements and omissions, and have been damaged thereby.

126.    Pursuant to the Securities Act, Plaintiff and Nationwide Class members are entitled to recover from Defendants Scuderi Group and Salvatore Scuderi the consideration paid for the securities, together with interest thereon from the date of payment, less the amount of any income received on the securities, upon the tender of the security.

## COUNT III

For Liability Under Section 15 of the Securities Act
(Against The Individual Scuderi Defendants on behalf of Plaintiff and the Nationwide Class)

127.    Plaintiff repeats and realleges each allegation set forth herein.

128.    Under Section 15 of the Securities Act

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

129.    As set forth above, Scuderi Group violated Sections 5, 12(a)(1), and 12(a)(2) of the Securities Act.   In particular, Scuderi Group: (1) sold securities to Plaintiff and the Nationwide Class that were not registered under Section 5 of the Securities Act, and are not exempt under Section 4; and (2) sold securities to Plaintiff and the Nationwide Class by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not

misleading, and knew, or in the exercise of reasonable care could have known, of the untruth or omission.

130.    The Individual Scuderi Defendants controlled Scuderi Group by virtue of their positions with Scuderi Group and/or influence to cause Scuderi Group to engage in the misconduct alleged herein.  The Individual Scuderi Defendants in fact exercised control over Scuderi Group in connection with Scuderi Group's sale of non-registered, non-exempt securities to Plaintiff and the members of the Nationwide Class.

131.    By virtue of their position as controlling persons of Scuderi Group, and their conduct alleged herein, the Individual Scuderi Defendants are jointly and severally liable to Plaintiff and the Nationwide Class under Counts I and II above.

132.    Accordingly, pursuant to the Securities Act, Plaintiff and the Nationwide Class members are entitled to recover from the Individual Scuderi Defendants the consideration paid for the securities, together with interest from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the securities.

## COUNT IV

For Violations of Sections 410(a)(1) and 301 of the Massachusetts Uniform Securities Act
(Against Scuderi Group and Salvatore Scuderi
on behalf of Plaintiff and the Massachusetts Class)

133.    Plaintiff repeats and realleges each allegation set forth herein.

134.    This count is brought pursuant to Sections 301 and 410(a)(1) of the Massachusetts Securities Act, seeking a judgment requiring Defendants to rescind or retract certain transactions pursuant to which they offered and sold unregistered securities to Plaintiff and the members of the Massachusetts Class.

135.     Section 410(a)(1) of the Massachusetts Securities Act, M.G.L. c. 110A, §
410(a)(1) provides that:

> Any person who offers or sells a security in violation of section 301 ... is
> liable to the person buying the security from him, who may sue either at
> law or in equity to recover the consideration paid for the security, together
> with interest at six per cent per year from the date of payment, costs, and
> reasonable attorneys' fees, less the amount of any income received on the
> security, upon the tender of the security, or for damages if he no longer
> owns the security.

136.     Defendants Scuderi Group and Salvatore Scuderi offered and sold securities in
Scuderi Group to Plaintiff and the members of the Massachusetts Class.

137.     By offering and/or selling unregistered securities to Plaintiff and the members of
the Massachusetts Class, without any proper exemption under Section 402 of the Massachusetts
Securities Act, M.G.L. c. 110A, § 402, Defendants Scuderi Group and Salvatore Scuderi violated
Section 301 of the Massachusetts Securities Act, M.G.L. c. 110A, § 301.

138.     Plaintiff and the members of the Massachusetts Class purchased Scuderi Group
preferred units and have been damaged thereby.

139.     Pursuant to the Massachusetts Securities Act, Plaintiff and the Massachusetts
Class members are entitled to recover from Defendants Scuderi Group and Salvatore Scuderi the
consideration paid for the securities, together with interest thereon at six percent per year from
the date of payment, less the amount of any income received on the securities, upon the tender of
the security.

## COUNT V

For Violations of Section 410(a)(2) of the Massachusetts Securities Act
(Against Scuderi Group and Salvatore Scuderi
on behalf of Plaintiff and the Massachusetts Class)

140.     Plaintiff repeats and realleges each allegation set forth herein.

141.    This count is brought pursuant to Section 410(a)(2) of the Massachusetts Securities Act, seeking a judgment requiring Defendants Scuderi Group and Salvatore Scuderi to rescind or retract certain transactions pursuant to which it sold securities by means of untrue statements or omissions of material fact to Plaintiff and the members of the Massachusetts Class.

142.    Section 410(a)(2) of the Massachusetts Securities Act provides, in relevant part, as follows:

> Any person who… offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security….

143.    Defendants Scuderi Group and Salvatore Scuderi offered and/or sold securities in Scuderi Group to Plaintiff and the members of the Massachusetts Class.

144.    As described above, in soliciting investors in Massachusetts, Scuderi Group and Salvatore Scuderi made untrue statements of material fact or omitted material facts necessary to make the statements made not misleading.

145.    By offering and/or selling securities to Plaintiff and the members of the Massachusetts Class through the use of the offering memoranda, by means of an untrue statement of a material fact or omission of a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading, Defendants Scuderi Group and Salvatore Scuderi violated Section 410(a)(2) of the Massachusetts Securities Act, M.G.L. c. 110A, § 410(a)(2).

146.     Plaintiff and the members of the Massachusetts Class purchased Scuderi Group preferred units without knowledge of the untrue statements and omissions and have been damaged thereby.

147.     Pursuant to the Massachusetts Securities Act, Plaintiff and the Massachusetts Class members are entitled to recover from Defendants Scuderi Group and Salvatore Scuderi the consideration paid for the securities, together with interest thereon at six percent per year from the date of payment, less the amount of any income received on the securities, upon the tender of the security.

## COUNT VI

For Liability Under Section 410(b) of the Massachusetts Securities Act
(Against the Individual Scuderi Defendants on behalf of Plaintiff and the Massachusetts Class)

148.     Plaintiff repeats and realleges each allegation set forth herein.

149.     Section 410(b) of the Act, provides, in relevant part, as follows:

> Every person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, … are also liable jointly and severally with and to the same extent as the seller, unless the non-seller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.

150.     As set forth above, Scuderi Group violated Sections 301 and 410(a)(1) and (2) of the Act.  In particular, Scuderi Group (1) sold securities to Plaintiff and the Massachusetts Class in the Commonwealth that were not registered under Section 301 of the Act, are not exempt under Section 402 and are not federal covered securities; and (2) sold securities to Plaintiff and the Massachusetts Class by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances in

under which they were made, not misleading, and knew, or in the exercise of reasonable care could have known, of the untruth or omission, in violation of Section 410(a)(2).

151.    The Individual Scuderi Defendants, directly or indirectly, controlled Scuderi Group, and served as officers and/or directors of Scuderi Group, or occupied a similar status or performed similar functions.

152.    The Individual Scuderi Defendants knew, or in the exercise of reasonable care could have known, of the existence of the facts by reason of which Scuderi Group is liable under the Massachusetts Securities Act.

153.    By virtue of their positions as controlling persons of Scuderi Group, and their conduct alleged herein, the Individual Scuderi Defendants are jointly and severally liable to Plaintiff and the Massachusetts Class under Counts IV and V above.

154.    Accordingly, pursuant to the Massachusetts Securities Act, Plaintiff and the Massachusetts Class members are entitled to recover from the Individual Scuderi Defendants the consideration paid for the securities, together with interest at six percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the securities.

## **COUNT VII**

For Liability Under Sections 410(b), 301, and 410(a)(2) of the Massachusetts Securities Act
(Against Salvatore Scuderi and Ruth Scuderi on behalf of Plaintiff and the Massachusetts Class)

155.    Plaintiff repeats and realleges each allegation set forth herein.

156.    Section 410(b) of the Act, provides, in relevant part, as follows:

> Every person … every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the non-seller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have

known, of the existence of the facts by reason of which the liability is alleged to exist.

157.    As set forth above, Scuderi Group violated Sections 301 and 410(a)(2) of the Massachusetts Securities Act.  In particular, Scuderi Group sold securities to Plaintiff and the Massachusetts Class in the Commonwealth that were not registered under Section 301 of the Massachusetts Securities Act and are not exempt under Section 402 and are not federal covered securities.  Scuderi Group also sold securities to Plaintiff and the Massachusetts Class by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, and knew, or in the exercise of reasonable care could have known, of the untruth or omission, in violation of Section 410(a)(2).

158.    Defendant Salvatore Scuderi, as an employee of the seller Scuderi Group, is liable under Section 410(b) of the Massachusetts Securities Act for materially aiding Scuderi Group's sales of unregistered securities in violation of Section 301 of the Massachusetts Securities Act, and Scuderi Group's sales of securities in violation of Section 410(a)(2) of that Act, and is jointly and severally liable with and to the same extent as Scuderi Group.

159.    Defendant Ruth Scuderi, as an employee of the seller Scuderi Group, is liable under Section 410(b) of the Massachusetts Securities Act for materially aiding Scuderi Group's sales of unregistered securities in violation of Section 301 of the Massachusetts Securities Act, and Scuderi Group's sales of securities in violation of Section 410(a)(2) of that Act, and is jointly and severally liable with and to the same extent as Scuderi Group.

160.    Defendants Salvatore Scuderi and Ruth Scuderi knew, or in the exercise of reasonable care could have known, of the existence of the facts by reason of which the Scuderi Group is liable under the Massachusetts Securities Act.

161.    Plaintiff and the members of the Massachusetts Class purchased Scuderi Group preferred units and have been damaged thereby.

162.    Accordingly, pursuant to the Massachusetts Securities Act, Plaintiff and the Massachusetts Class members are entitled to recover from Salvatore Scuderi and Ruth Scuderi the consideration paid for the securities, together with interest at six percent per year from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the securities.

## COUNT VIII

Rescission
(Against All Defendants on behalf of Plaintiff and the Classes)

163.    Plaintiff repeats and realleges each allegation set forth herein.

164.    Plaintiff purchased Scuderi Group preferred units that were not registered under the Securities Act or the Massachusetts Securities Act pursuant to offering memoranda which represented that the units were exempt from registration under the Securities Act and the Massachusetts Securities Act.

165.    For the reasons set forth above, the preferred units were not exempt from registration under the Securities Act or the Massachusetts Securities Act.

166.    Under *Frishman v. Maginn*, 75 Mass. App. 103 (2009), the sales of unregistered securities in violation of federal and state securities laws are void as against Massachusetts public policy.

167.    Accordingly, the transactions should be rescinded, and Plaintiff and the Classes are entitled to recover the consideration paid for the securities, together with interest from the date of payment, less the amount of any income received on the securities.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the other members of the Nationwide Class the Massachusetts Class, requests that the Court enter judgment against Defendants as follows:

A.      Declaring that this is a properly maintainable class action under Federal Rule of Civil Procedure 23 and declaring Plaintiff to be a proper Class representative;

B.      Awarding Plaintiff and members of the Nationwide Class the full recovery of the consideration paid for the securities at issue, together with interest from the date of payment, less the amount of any income received on the securities, for violations of the Securities Act;

C.      Awarding Plaintiff and members of the Massachusetts Class the full recovery of the consideration paid for the securities at issue, together with interest at six percent per year from the date of payment, less the amount of any income received on the securities, for violations of the Massachusetts Securities Act;

D.      Holding the Individual Scuderi Defendants jointly and severally liable with Scuderi Group for its violations of the Securities Act and the Massachusetts Securities Act;

E.      Declaring that the sales of Scuderi Group preferred units are void as against public policy, and rescinding such transactions;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

Dated:  November 12, 2013                    By their attorneys:

                                             **/s/Ian J. McLoughlin**
                                             Thomas G. Shapiro (BBO # 454680)
                                             Michelle Blauner (BBO # 549049)
                                             Ian J. McLoughlin (BBO # 647203)
                                             Shapiro Haber & Urmy LLP
                                             53 State Street
                                             Boston, MA 02109
                                             Telephone: (617) 439-3939
                                             Facsimile: (617) 439-0134
                                             tshapiro@shulaw.com
                                             mblauner@shulaw.com
                                             imcloughlin@shulaw.com

                                             *Attorneys for Plaintiff and the Classes*

**CERTIFICATE OF SERVICE**

        I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) on November 12, 2013.

                                             **/s/Ian J. McLoughlin**
                                             Ian J. McLoughlin

## Certification of Plaintiff
## Pursuant to Federal Securities Laws

I, _Paul Fournier_ , declare under the pains and penalties of perjury as follows:

1.    I have reviewed a Complaint against Scuderi Group, LLC, et al. ("Scuderi"), and authorize a filing of a comparable complaint on my behalf.

2.    I did not purchase my Scuderi preferred units at the direction of plaintiffs' counsel or in order to participate in any private action arising under the federal securities laws.

3.    I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

4.    To the best of my current knowledge, the attached sheet lists all of my purchases and sales in Scuderi preferred units during the Class Period as specified in the Complaint.

5.    During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

6.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

7.    The matters stated in this declaration are true to the best of my current knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated _6-11-13_

_Paul Fou_
(Signature)

_Paul Fournier_
(Type or Print Name)

|  |  | Preferred Units |  |  |  |  |  |
| Date | Series | Purchased | Price Per Unit | Total Purchase Price | Income | Sales | Losses |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 3/9/2006 | B | 46875* | $1.60 | $75,000.00 | $0.00 | $0.00 | $75,000.00 |
| 3/28/2006 | B | 21875* | $1.60 | $35,000.00 | $0.00 | $0.00 | $35,000.00 |
| 4/24/2006 | B | 21875* | $1.60 | $35,000.00 | $0.00 | $0.00 | $35,000.00 |
| 5/3/2006 | B | 1875* | $1.60 | $3,000.00 | $0.00 | $0.00 | $3,000.00 |
| 1/28/2008 | C | 1000* | $5.60 | $5,600.00 | $0.00 | $0.00 | $5,600.00 |
| 6/17/2009 | C | 90* | $5.60 | $504.00 | $0.00 | $0.00 | $504.00 |
| 2/18/2011 | D | 7,250 | $5.60 | $40,600.00 | $0.00 | $0.00 | $40,600.00 |
| 3/2/2011 | D | 356 | $5.60 | $1,992.20 | $0.00 | $0.00 | $1,992.20 |
| TOTALS | D | 7,606 | $5.60 | $196,696.20 | $0.00 | $0.00 | $196,696.20 |

* These preferred units subsequently split 2:1